IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| HERBERT O. ROBERTSON, JR., | ) | CASE NO. 1:19-cv-00371 |
| | ) | |
| Petitioner, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| ACTING WARDEN PRITCHARD, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

Petitioner Herbert O. Robertson, Jr. ("Robertson" or "Petitioner") brings this habeas

corpus action pursuant to 28 U.S.C. § 2254.  Doc. 1 ("Petition").  His Petition is deemed filed on

February 13, 2019, the date he placed it in the prison mailing system.[1]  Doc. 1, p. 15 (hereinafter

referred to as "Petition").  Robertson's Petition relates to his conviction and sentence rendered in

Cuyahoga County Common Pleas Court Case No. CR-16-612274, *State of Ohio v. Herbert O.*

*Robertson, Jr.*  Doc. 1, p. 1; Doc. 11-1, p. 12.  Following a bench trial in June 2017, the trial

court found Robertson guilty of two counts of felonious assault with one- and three-year firearm

specifications (Counts One and Two) and one count of having weapons while under disability

(Count Three).  Doc. 11-1, p. 12.  Counts One and Two merged and the State elected to proceed

on Count One.  *Id.*  Thereafter, in August 2017, the trial court sentenced Robertson to a total of

six years in prison.  Doc. 11-1, pp. 18, 79.  On Count One, the trial court sentenced Robertson to

three years on the firearm specification[2] to be served prior to and consecutive with 3 years on the

---

[1] "Under the mailbox rule, a habeas petition is deemed filed when the prisoner gives the petition to prison officials
for filing in the federal courts." *Cook v. Stegall,* 295 F.3d 517, 521 (6th Cir. 2002) (citing *Houston v. Lack,* 487 U.S.
266, 273 (1988)).  Robertson's Petition was docketed in this Court on February 20, 2019.  Doc. 1.

[2] The trial court found that the one- and three-year firearm specifications merged in Count One.  Doc. 11-1,
p. 18.

1

base felonious assault charge and, on Count Three, the trial court sentenced Robertson to 24 months to be served concurrent to Count One.  *Id.*  The trial court also imposed three years post-release control and costs.  *Id.*

This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2.  On October 1, 2019, Respondent filed an Answer/Return of Writ.  Doc. 11.  Robertson filed a Reply to Respondent's Answer (Traverse) on October 15, 2019.  Doc. 12.

Subsequently, without leave of court, Robertson filed two supplements to his Traverse (Doc. 13 ("first supplement"); Doc. 15 ("second supplement")); an unsigned letter (Doc. 14); and a motion to be heard concerning new facts (Doc. 18).  Respondent filed a motion to strike Robertson's second supplement.  Doc. 16.  These filings and motions are addressed and ruled on below.[3]

Robertson did not seek leave to file supplements to his Traverse and the letter he submitted is unsigned.  The unsigned letter and the second supplement seek to introduce new information or evidence into these habeas proceedings pertaining to the investigating detective, i.e., information and a news article, not specific to Robertson or his case, but relating to David Talley, the victim, and the investigating detective involved in Robertson's convictions, arguing that the information demonstrates that the investigating detective has a history of not being credible and that he has been framed.  Doc. 14, Doc. 15, Doc. 15-1.  And, the motion to be heard concerning new facts seeks to introduce new character evidence concerning David Talley.  Doc. 18.  Robertson's unsigned letter, second supplement, and motion to be heard concerning new facts amount to a request to expand the record.

---

[3] Robertson also filed a motion for the right to counsel (Doc. 17), which the undersigned has addressed in a separately filed order.

Expansion of the record is discretionary. *See* Rule 7 of the Rules Governing § 2254 Cases, 28 U.S.C.A. foll. § 2254 (". . . the judge *may* direct the parties to expand the record . . .) (emphasis supplied).  Additionally, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."  *Moore v. Mitchell*, 708 F.3d 760, 781 (6th Cir. 2013) (quoting *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011)).

The undersigned finds that Robertson has not demonstrated a basis upon which to expand the record to include information or evidence that was not part of the record before the state court.  Accordingly, Respondent's motion to strike Petitioner's supplement filed on January 13, 2020 (Doc. 16) is **GRANTED** and Doc. 15 is hereby stricken.  The unsigned letter (Doc. 14) is also stricken.  Robertson's motion to be heard concerning new facts (Doc. 18) is **DENIED**.

The first supplement filed on November 13, 2019, is not stricken.  Although Robertson did not seek leave to file his first supplement, it was filed only one month after his Traverse.  Also, in the first supplement, Robertson does not seek to introduce new evidence; he makes arguments based on the record before the trial court.  Nevertheless, while the first supplement is not stricken, as explained below, to the extent that Robertson attempts to raise new claims in his first supplement to his Traverse that were not presented in his Petition, those claims are not considered herein.

Furthermore, the undersigned having considered the Petition, related filings, and state court record, for the reasons explained herein, the undersigned recommends that the Court **DISMISS and/or DENY** Robertson's Petition (Doc. 1).

## I. Factual Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual findings are presumed correct.  28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008).  The Eighth District Court of Appeals summarized the facts underlying Robertson's conviction and sentence as follows:

> {¶ 2} On December 22, 2016, a Cuyahoga County Grand Jury indicted Robertson on two counts of felonious assault (with one-year and three-year firearm specifications) and one count of having weapons while under disability in connection with the November 23, 2016 shooting of David Talley. Robertson waived his right to a jury trial and the case was tried to the bench.
>
> {¶ 3} Talley, Cleveland patrol officer Carmen Messina and the detective who investigated the incident, Cleveland police detective Aaron Reese, testified on behalf of the state.
>
> {¶ 4} Talley testified that during the early morning of November 23, 2016, while he was driving to a bar on St. Clair Avenue, he stopped for a red traffic signal at the intersection of East 55th Street and Quincy Avenue in Cleveland. While waiting at the light, he looked "down for a second" at his phone. When he looked up, he saw a tan Ford Explorer "shoot around me, like almost ahead of me" and that the driver began shooting at him. Talley identified Robertson — whom he knew as "Too Too" — as the shooter. Talley testified that he saw Robertson "on the passenger side of me," driving the Explorer from which the shots originated, "[l]ike right before they started." Talley testified that Robertson had a gun in his hand and that when he looked over towards him, the shots "started coming." Talley could not state whether the gun he saw was a revolver or semi-automatic. Talley testified that when the shooting started, he "balled up," then drove away and "never looked back." Talley was shot five times — four times in his right arm and once in the right side of his abdomen. Talley testified that he did not see anyone else in the Explorer at the time of the shooting.
>
> {¶ 5} Talley identified his car in police photographs taken after the incident, showing multiple bullet holes in the passenger-side doors and windows. He testified that his car had had no bullet holes prior to the incident. Talley did not see whether any shell casings had been expelled from the gun when it was fired.

{¶ 6} Talley testified that after he left the scene, he drove several blocks north to the intersection of East 55th Street and Euclid Avenue. He flagged down two Cleveland police officers and told them he had been shot. Talley testified that he passed out and woke up in the hospital, where he again spoke with police.

{¶ 7} Officer Messina testified that he and his field training officer were in a zone car, stopped at a red traffic light at the intersection of Euclid Avenue and East 55th Street, when Talley pulled up alongside them in his vehicle, screaming that he had been shot and asking for help. As the officers got out of their vehicle to assist him, Talley opened the driver's door of his vehicle and fell out of the vehicle onto the ground, "writhing in pain." Officer Messina testified that Talley had "quite a few wounds" to his right arm and a wound in his right abdomen area that was "bleeding profusely." The officers requested EMS assistance and began to administer first aid. Officer Messina testified that they asked Talley where and when the shooting had occurred and that he responded that it had "just happened" at the intersection of East 55 Street and Quincy Avenue. EMS arrived approximately ten minutes later and transported Talley to MetroHealth hospital.

{¶ 8} After EMS arrived, the officers inspected Talley's vehicle from the outside to see if they could see a weapon, bullet fragments or other evidence to corroborate Talley's claims. Officer Messina testified that he observed that "the vehicle had been shot up quite a few times" with numerous bullet holes in the passenger side doors and windows but that he saw little else.

{¶ 9} Officer Messina and his field officer interviewed Talley at the hospital. Officer Messina testified that Talley "seemed very upset," "very much in pain" and "very shut down[,] [l]ike he didn't want to talk." He testified that when the officers "finally got him to open up and talk," he "shied away * * * like he was scared." Messina testified that Talley told the officers that he was shot while he was sitting in his vehicle after a tan Ford Explorer pulled up alongside the passenger side of his vehicle at the corner of East 55th Street and Quincy Avenue. He said that the driver of the vehicle was shooting at him and that he knew him only as "Too Too."

{¶ 10} Detective Reese, the Cleveland police detective assigned to investigate the case, was the state's final witness. He testified that, as part of his investigation, he visited both the intersections of East 55th Street and Quincy Avenue and East 55th Street and Euclid Avenue. The detective indicated that he found no surveillance footage or any broken glass, spent shell casings, bullets or other physical evidence at either location. Detective Reese testified that, due to Talley's injuries, he was not able to speak with Talley immediately, but "followed up" and interviewed him "seven or eight days later" at Talley's sister's house. The detective testified that, during the interview, Talley "reiterated what he had told the responding officers," identifying the shooter as "Too Too," told the detective the "background story" involving Too Too and provided the detective with a photograph of Too Too.

5

{¶ 11} As to the "background story" involving Too Too, the detective testified that Talley told him that he had first met Too Too when they were both incarcerated at Big Sandy, a federal correctional facility. Talley told the detective that Too Too told him he had been hired to kill Talley. The detective testified that Talley also told him that, a month before the shooting, he ran into Too Too at a plaza on East 79th Street. After Too Too showed Talley a firearm with an extended magazine, Talley felt "so unsafe" that he went inside a nearby cell phone store "to be sure that if anything happened to him, that it would be captured on surveillance video inside the store."

{¶ 12} After interviewing Talley, the detective spoke with the owner of the cell phone store Talley had mentioned. The owner indicated that he recalled Talley "being there" but that no surveillance video was available.

{¶ 13} Detective Reese testified that he learned the identity of Too Too after reaching out to several contacts he had at the federal probation department. He gave his contacts the relevant incarceration dates and asked if they knew anyone with the nickname "Too Too." These contacts provided the detective with Robertson's name and information. The detective reviewed Robertson's information, looked at photographs of him, compared them to the photograph he had received from Talley and determined that Too Too and Robertson were, in fact, the same person.

{¶ 14} Robertson was arrested, and Detective Reese interviewed him as well. The state introduced a video recording of the interview into evidence.[1] During the interview, Robertson confirmed that his nickname was "Too Too," that he knew Talley as "Hot Boy" and that he knew Talley's brother. Robertson denied any involvement in Talley's shooting but stated that he went to the hospital after Talley had been shot. Robertson also stated that he needed money for his family and that Talley had accused him of accepting money to "put out a hit" on Talley.

> FN 1 - The state also introduced 36 photographs of the vehicle and the intersections at issue, a certified journal entry setting forth Robertson's prior conviction for the having weapons while under disability charge and Talley's medical records relating to the shooting. All of these exhibits were admitted into evidence without objection. The exhibits, however, were not included with the record on appeal. Sua sponte, this court ordered the parties to assist the clerk's office in locating the trial exhibits. The exhibits have not been located and submitted to this court. As such, we cannot consider the exhibits themselves in deciding the issues in this appeal but, presuming the regularity of the proceedings, may consider the testimony about them in the transcript. The following description of the information Robertson provided during his interview is based on Detective Reese's testimony— as to which there was no objection.

{¶ 15} On cross-examination, defense counsel questioned Detective Reese regarding the plausibility of Talley's version of events given that no shell casings,

glass or other physical evidence had been found at the scene. The detective stated these are "very busy" intersections and that this type of physical evidence is "very small" and can be moved by passing cars and pedestrians. He further testified that, depending on which direction the Explorer was traveling, i.e., whether it was traveling in the same direction as Talley's vehicle, and how the shooter was holding the gun, i.e., whether the shooter was holding the gun inside or outside the vehicle when shooting, the shell casings might not eject onto the street. He further testified that given the direction from which the bullets were fired and the fact that the window glass in the passenger side window of Talley's vehicle remained largely intact, he would have expected glass to be on the inside of Talley's vehicle rather than the street.

{¶ 16} The detective did not conduct any investigation relating to Robertson's cell phone to see if it could be determined where Robertson was at the time of the incident. The Explorer Talley described was never located. No gun that could be linked to the incident was found. The detective acknowledged that there was "no corroboration" that anything happened at the intersection of East 55th Street and Quincy Avenue "other than what Mr. Talley said."

{¶ 17} After the state rested, Robertson moved for a judgment of acquittal on all three counts. The trial court denied the motion. Robertson rested without calling any witnesses. He then renewed his Crim.R. 29 motion. Once again, the trial court denied the motion. The court found Robertson guilty of all three counts.

*State v. Robertson*, 2018 WL 3601848 (Ohio App. Ct. July 26, 2018) (alterations in original); Doc. 11-1, pp. 73-79.

## II. Procedural Background

### A. State court conviction

On December 22, 2016, a Cuyahoga County, Ohio grand jury indicted Robertson on three counts: (1) Count One – felonious assault in violation of O.R.C. § 2903.11(A)(1), with one- and three-year firearm specifications; (2) Count Two – felonious assault in violation of O.R.C. § 2903.11(A)(2), with one- and three-year firearm specifications; and (3) Count Three – having weapons under disability in violation of O.R.C. § 2923.13(A)(2).  Doc. 11-1, pp. 4-5.

On December 28, 2016, Robertson pleaded not guilty to the indictment.  Doc. 11-1, p. 6.
On February 10, 2017, Robertson filed a pro se motion to dismiss counsel.[4]  Doc. 11-1, p. 7.  On
June 22, 2017, Robertson signed a waiver of jury trial, that was countersigned by his counsel and
the case proceeded to a bench trial.  Doc. 11-1, pp. 8-11.  The trial court found Robertson guilty
as charged in the indictment.  Doc. 11-1, p. 12.  Counts One and Two merged and the State
elected to proceed on Count One.  *Id.*  Sentencing was scheduled for August 2017. *Id.*  On July
21, 2017, Robertson filed a pro se motion for new trial and/or acquittal.[5]  Doc. 11-1, pp. 13-17.

On August 23, 2017, the trial court sentenced Robertson to a total of six years in prison.
Doc. 11-1, pp. 18, 79; Doc. 11-2, pp. 151-153.  On Count One, the trial court sentenced
Robertson to three years on the firearm specification[6] to be served prior to and consecutive with
3 years on the base felonious assault charge and, on Count Three, the trial court sentenced
Robertson to 24 months to be served concurrent to Count One.  *Id.*  The trial court also imposed
three years post-release control and costs.  *Id.*  The trial court appointed new counsel to represent
Robertson on appeal.  Doc. 11-1, p. 18; Doc. 11-2, pp. 152-153.

---

[4] The disposition of this motion is not reflected in the record but, the record reflects that, during his
sentencing, Robertson raised the fact that he had filed a motion to dismiss his counsel but, the trial court
had not ruled on it.  Doc. 11-2, pp. 138-140.  The trial court informed Robertson that motions filed pro se
by individuals who are represented by counsel are not considered by the court.  Doc. 11-2, p. 138.  Also,
the trial court informed Robertson that the court did not observe Robertson's counsel not representing him
to the best of his ability.  Doc. 11-2, p. 139.

[5] The disposition of this motion is not reflected in the record.

[6] The trial court found that the one- and three-year firearm specifications merged in Count One.  Doc. 11-1,
p. 18.

**B.  Direct appeal**

On September 19, 2017, Robertson, through appellate counsel, filed an appeal with the Eighth District Court of Appeals.  Doc. 11-1, pp. 20-28.  On January 22, 2018, Robertson's appellate brief (Doc. 11-1, pp. 29-45), raising the following two assignments of error, was filed:

1.  The trial court erred in admitting testimony by the investigating detective as to statements made to him by the alleged victim.

2.  The trial court erred in entering a conviction which was against the manifest weight of the evidence.

Doc. 11-1, pp. 33, 38-43.  The State filed its brief on March 16, 2018.  Doc. 11-1, pp. 46-61. Robertson filed a reply brief on March 23, 2018.  Doc. 11-1, pp. 62-70.  On July 26, 2018, the Eighth District Court of Appeals affirmed the trial court's judgment.[7]  Doc. 11-1, pp. 71-90.

On August 20, 2018, Robertson, acting pro se, filed a Notice of Appeal and Memorandum in Support of Jurisdiction with Supreme Court of Ohio.  Doc. 11-1, pp. 91-126, 169.  Subsequently, on September 10, 2018, Robertson filed an Amended Memorandum in Support of Jurisdiction.  Doc. 11-1, pp. 127-153, 169.  In his Memorandum in Support of Jurisdiction, Robertson raised the following two propositions:

1.  The trial court erred in admitting testimony by the investigating detective as to statements made to him by the alleged victim.

2.  The trial court erred in entering a conviction which was against the manifest weight of the evidence.

---

[7] Prior to rendering its decision, the court of appeals sua sponte ordered the parties to assist the clerk's office with locating the trial exhibits in the case.  Doc. 11-1, pp, 77, 167.  However, as the court of appeals noted in its decision, the exhibits were not located and submitted to the court of appeals.  Doc. 11-1, p. 77, ¶ 14, n. 1.

Doc. 11-1, pp. 134-135.  On November 21, 2018, the Supreme Court of Ohio declined to accept

jurisdiction of Robertson's appeal.  Doc. 11-1, p. 154.

### C.  Federal habeas corpus petition

Robertson raises the following two grounds for relief in his Petition:

**GROUND ONE:**[8]

**Supporting Facts:**  Detective Aaron Reese was the investigating detective who under oath made false statements as to his version of what was told to him by the victim David Talley.  Though victim Talley testified to a completely difference version of events.

Detective Reese also made false statement as to what he said Defendant told him.  Detective Reese lied under oath that Defendant Herbert O. Robertson Jr. told him/confessed to him that Defendant was passing back and forth in the area the night of the crime –> see Transcript Page 95.

Also when Detective Reese was asked in court if he had only interviewed me the one time which was recorded by bodycam and Detective Reese admitted during trial that the only time he interviewed Defendant Robertson was that one time.  Detective Reese stated on transcript page 95 that (based on what he said in that statement.  If you watch that statement, he says -- when I ask him am I going to see your phone anywhere in that area, initially he said no, then he said, well passing back and forth.  So I just assumed that his phone would be in that area based on him saying passing back and forth.)

That was a false statement made by Detective Reese as to what he said Defendant told him during the course of their interview.

See Transcript Page 76 for State's Exhibit 39 which is suppose to be the bodycam video between the interview of Detective Reese and Defendant.  I have reason to believe that the words are not recorded on to the transcript do to false statements that the Detective made, and if the video is retrieved Exhibit 39 will be the proof of what I am saying.  I am 100% innocent of this crime/wrongfully convicted.

**GROUND TWO:**[9]

**Supporting Facts:**  David Talley's credibility as a witness was in question from the time he walked in the courtroom on the day of my trial and

---

[8] Ground One is not labeled; there are only supporting facts included.  Doc. 1, pp. 6-7.

[9] Ground Two is not labeled; there are only supporting facts included.  Doc. 1, p. 8.

> continuously told the Judge he did not know who shot him. In his testimony
> as well as there being no evidence at all was against the manifest weight.

Doc. 1, pp. 6-8.

In his Traverse, Robertson raises a host of other claims. Doc. 12. For example, he

contends the charging indictment is a fraud, legal sham process; he was denied his right to face

his accusers; the trial court erred in not allowing a witness to plead the Fifth Amendment; trial

counsel was ineffective; he did not fully understand and was not fully informed of his rights,

including his right to a jury trial; the trial court did not rule on his motion to dismiss counsel; and

he was denied his right a speedy trial. Doc. 12, pp. 4-8. However, these claims are not grounds

for relief asserted in Robertson's federal habeas petition and a court is not required to address a

theory of relief asserted only in a traverse but not in the habeas petition. *See Tyler v. Mitchell*,

416 F.3d 500, 504 (6th Cir. 2005). Moreover, the other alleged violations scattered throughout

Robertson's Traverse were not fairly presented or exhausted in state court. Accordingly, the

undersigned has only considered the two grounds for relief set forth in Robertson's Petition.

### III. Law & Analysis

#### A. Standard of review under AEDPA

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No.

104-132, 110 Stat. 1214 ("AEDPA"), apply to petitions filed after the effective date of the

AEDPA. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007). In particular, the controlling

AEDPA provision states:

> (d) An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the merits
> in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an
> > unreasonable application of, clearly established Federal law, as
> > determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  "A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'"  *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)).  "A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'"  *Id.* at 599-600 (quoting *Williams*, 529 U.S. at 413).  "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous."  *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).  "The state court's application of clearly established law must be objectively unreasonable."  *Id.*

"A state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding' only if it is shown that the state court's presumptively correct factual findings are rebutted by "clear and convincing evidence" and do not have support in the record."  *Matthews v. Ishee*, 486 F.3d 883, 889 (6 th Cir. 2007) (citing 28 U.S.C. § 2254(d) and § 2254(e)(1)).  "The presumption of correctness also applies to factual findings made by a state appellate court based on the trial record."  *Matthews*, 486 F.3d at 889 (citing *Sumner v. Mata,* 449 U.S. 539, 546-47, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981)).

In order to obtain federal habeas corpus relief, a petitioner must establish that the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Bobby v.*

*Dixon*, 132 S. Ct. 26, 27 (2011) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011).

This bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions

in the state criminal justice systems,' not a substitute for ordinary error correction through

appeal." *Richter*, 131 S. Ct. at 786 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)

(Stevens, J., concurring in judgment)).  In short, "[a] state court's determination that a claim

lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

correctness of the state court's decision." *Id*. (quoting *Yarborough v. Alvarado*, 541 U.S. 652,

664 (2004)).  The petitioner carries the burden of proof.  *Cullen v. Pinholster*, 131 S.Ct. 1388,

1398 (2011).

### B.    Exhaustion and procedural default

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted

all available remedies in state court.  28 U.S.C. § 2254(b)(1)(A).  A state defendant with federal

constitutional claims must fairly present those claims to the state courts before raising them in a

federal habeas corpus action.  28 U.S.C. § 2254(b), (c); *Anderson v. Harless*, 459 U.S. 4, 6

(1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*,

444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003))

("[f]ederal courts do not have jurisdiction to consider a claim in a habeas petition that was not

'fairly presented' to the state courts").  In order to satisfy the fair presentation requirement, a

habeas petitioner must present both the factual and legal underpinnings of his claims to the state

courts.[10]  *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  This means that the petitioner

---

[10] In determining whether a petitioner presented his claim in such a way as to alert the state courts to its federal
nature, a federal habeas court should consider whether the petitioner: (1) relied on federal cases employing
constitutional analysis; (2) relied on state cases employing constitutional analysis; (3) phrased the claim in terms of
constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleged
facts well within the mainstream of constitutional law.  *McMeans*, 228 F.3d at 681.

must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law.  *See, e.g.*, *Franklin v. Rose*, 811 F.2d 322, 324-325 (6th Cir. 1987); *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987).  Further, a constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).

Additionally, a petitioner must meet certain procedural requirements in order to have his claims reviewed in federal court.  *Smith v. Ohio Dep't of Rehab. & Corr.,* 463 F.3d 426, 430 (6th Cir. 2006).  "Procedural barriers, such as . . . rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  *Daniels v. United States*, 532 U.S. 374, 381 (2001).  Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts.  *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).  Failure to exhaust applies where state remedies are "still available at the time of the federal petition."  *Id.* at 806 (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)).  In contrast, where state court remedies are no longer available, procedural default rather than exhaustion applies.  *Williams*, 460 F.3d at 806.

Procedural default may occur in two ways.  *Williams*, 460 F.3d at 806.  First, a petitioner procedurally defaults a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court."[11] *Id.*  Second, "a petitioner may procedurally default a

---

[11] In *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986), the Sixth Circuit provided four prongs of analysis to be used when determining whether a claim is barred on habeas corpus review due to a petitioner's failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error. *See also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule

14

claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)); *see also  Baston v. Bagley*, 282 F.Supp.2d 655, 661 (N.D.Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."); *see also State v. Moreland*, 50 Ohio St.3d 58, 62 (1990)(failure to present a claim to a state court of appeals constituted a waiver).   "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Williams*, 460 F.3d at 806.  While the exhaustion requirement is technically satisfied because there are no longer any state remedies available to the petitioner, see *Coleman v. Thompson,* 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review.  *Williams,* 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice that resulted from the alleged violation of federal law or that there will be a fundamental miscarriage of justice if the claims are not considered.  *Coleman*, 501 U.S. at 750.  "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot be fairly attributed to him." *Id.* at 753.  "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id.*   "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

---

is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

**C.  The undersigned recommends that the Court DISMISS and/or DENY Ground One**

In Ground One, Robertson argues that the investigating detective – Aaron Reese - made false statements under oath regarding what the victim, David Talley, and Robertson said to Detective Reese during interviews.  Doc. 1, pp. 6-7.

Robertson did not present the claim in Ground One to the state courts in the same manner as he presents it in his Petition.  His claim in state court relating to Detective Reese's testimony was that the trial court erred in admitting Detective Reese's testimony as to statements made by David Talley because the testimony constituted inadmissible hearsay under Ohio's evidence rules.  Doc. 11-1, pp. 38-42, 134.  There was no claim raised in state court concerning Detective Reese's testimony as to what Robertson said to Detective Reese.  Further, the claim that was presented regarding Detective Reese's testimony was based on state law.  No federal constitutional claim was raised.

"[A] petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'"  *Williams*, 460 F.3d at 806 (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)); *see also  Baston*, 282 F.Supp.2d at 661 ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition.").  Further, in order to satisfy the fair presentation requirement, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts.  *McMeans*, 228 F.3d at 681.  This means that the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law.  *See, e.g.*, *Franklin*, 811 F.2d at 324-325; *Prather*, 822 F.2d at 1421.

Here, Robertson did not fairly present the claims he now raises in Ground One to the state courts.  Thus, Ground One is subject to dismissal as being unexhausted and/or procedurally

16

defaulted because there is no avenue for Robertson to now present his claim in state court.  In order to overcome the default, Robertson must show cause for the default and actual prejudice that resulted from the alleged violation of federal law or that there will be a fundamental miscarriage of justice if the claims are not considered.  *Coleman*, 501 U.S. at 750.

In his Traverse, Robertson contends that his claims should not be deemed defaulted because he did not receive effective assistance of counsel at trial or on appeal.  Doc. 12, p. 2.  "Attorney error that constitutes ineffective assistance of counsel is cause" to overcome procedural default.  *Coleman v. Thompson*, 501 U.S. 722, 754 (1991).  However, claims of ineffective assistance of counsel cannot provide cause for the procedural default of another claim if the ineffective assistance claim itself is procedurally defaulted.  *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000).  Although "that procedural default may [] *itself* be excused if the prisoner can satisfy the cause-and-prejudice standard with respect to *that* claim."  *Id*. (emphasis original).  Here, Robertson procedurally defaulted any claim of ineffective assistance of trial or appellate counsel.  He did not raise a claim of ineffective assistance of trial or appellate counsel in his direct appeal or through the filing of an Ohio App. R. 26(B) application and he has not argued or demonstrated cause and prejudice to overcome his procedural default of a claim of ineffective assistance of counsel.  Thus, Robertson cannot demonstrate "cause" necessary to avoid his procedural default of Ground One.

Also, Robertson has not demonstrated a fundamental miscarriage of justice will occur if his claims in Ground One are not heard.  "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'"  *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986).  The claim requires a showing of "new reliable evidence" and factual innocence, not mere legal insufficiency.  *See Schulp v. Delo*,

513 U.S. 298, 324 (1995); *Bousley v. United States*, 523 U.S. 614, 623 (1998).  Although Robertson claims in Ground One that he is one-hundred percent innocent, he fails to establish a claim, based on new reliable evidence, that he is actually innocent.  Accordingly, Robertson's procedural default should not be excused based on his claim of innocence.[12]

Assuming arguendo that Ground One is an attempt by Robertson to raise the claim that he raised in state court, i.e., that the trial court erred in allowing Detective Reese to testify to inadmissible hearsay, such a claim is not cognizable on federal habeas review.  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Yet, "[w]hen an evidentiary ruling is so egregious that it results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief."  *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003) (citing *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001).  Nonetheless, the "category of infractions that violate 'fundamental fairness'" has been defined very narrowly.  *Dowling v. U.S.*, 493 U.S. 342, 352 (1990); *Bugh,* 329 F.3d at 512.  Accordingly, a state court's evidentiary ruling generally will not constitute a due process violation unless it offends "some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental."  *Bugh*, 329 F.3d at 512 (quoting *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000)).

Robertson has not shown or argued that his claim in Ground One raises a federal constitutional claim.  Further, Robertson has not shown that the admission of testimony from

---

[12] To the extent that Robertson seeks to raise a stand-alone claim of actual innocence in Ground One, his claim is not cognizable on federal habeas review.  *See Herrera v. Collins*, 506 U.S. 390, 404 (1993) ("[A] claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.").

Detective Reese regarding statements David Talley made to him was so egregious that the evidentiary rulings resulted in a denial of due process.  The state court of appeals considered and overruled the hearsay assignment of error.  In doing so the state court of appeals stated:

{¶ 20} In his first assignment of error, Robertson argues that the trial court erred in admitting Detective Reese's testimony regarding "information he received from Talley," specifically, Talley's statements to Detective Reese (1) that he and Robertson had been incarcerated together in a federal prison; (2) that Robertson had told Talley that he had been hired to kill him; and (3) regarding Talley's encounter with Robertson in a shopping plaza a month before the shooting when Robertson showed Talley a firearm with an extended magazine and Talley ran into a cell phone store fearing for his safety. Robertson contends that this testimony was inadmissible hearsay and that the admission of such evidence, over Robertson's objection, was prejudicial.

{¶ 21} Whether to admit evidence lies within the broad discretion of a trial court. A reviewing court will not reverse a trial court's evidentiary decisions in the absence of an abuse of discretion that has resulted in material prejudice to the defendant. *State v. Rucker*, 8th Dist. Cuyahoga, 2018-Ohio-1832, —— N.E.3d —— –, ¶ 27, citing *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, 781 N.E.2d 88, ¶ 43. A trial court abuses its discretion when it acts unreasonably, arbitrarily or unconscionably. *Noling* at ¶ 43; *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 22} Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). If a statement is offered for a purpose other than to prove the truth of the matter asserted, it is not hearsay. *State v. Osie*, 140 Ohio St.3d 131, 2014-Ohio-2966, 16 N.E.3d 588, ¶ 118, citing *State v. Davis*, 62 Ohio St.3d 326, 343, 581 N.E.2d 1362 (1991). Hearsay is inadmissible unless it falls within a specific exception to the hearsay rule. Evid.R. 802.

{¶ 23} Law enforcement officers may testify regarding out-of-court statements for the nonhearsay purpose of explaining the next investigatory step. *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 186; *State v. Thomas*, 61 Ohio St.2d 223, 232, 400 N.E.2d 401 (1980). Such testimony is admissible if it satisfies three requirements: (1) the conduct to be explained is relevant, equivocal and contemporaneous with the statements; (2) the probative value of the statements is not substantially outweighed by the danger of unfair prejudice; and (3) the statements do not connect the accused with the crime charged. *State v. Ricks*, 136 Ohio St.3d 356, 2013-Ohio-3712, 995 N.E.2d 1181, ¶ 27.

{¶ 24} Although we find that Detective Reese's testimony regarding Talley's statements that he and Robertson had been incarcerated together in a federal prison satisfies these requirements — offered for the purpose of explaining what led Detective Reese to contact his federal probation office contacts and how he thereafter determined that "Too Too" (depicted in the photograph he received from Talley) was Robertson — we believe his testimony regarding what Talley told him about his encounter with Robertson at the shopping plaza likely goes beyond what is permissible in describing the steps in an investigation. Given the other evidence presented, there was no need for the state to offer this testimony by Detective Reese to explain his investigation.

{¶ 25} Nevertheless, even assuming the trial judge erred in admitting the testimony, we do not find the error to be prejudicial. Talley identified Robertson as the person who shot him during his trial testimony, had previously identified him (by his nickname "Too Too") as the shooter when speaking with the responding officers and had provided a photo of Robertson, whom he identified as the shooter, to the investigating detective. During his post-arrest interview — which the state admitted without objection — Robertson told Detective Reese that Talley had accused him of accepting money to "put out a hit" on Talley. Based on the record before us, in view of the other evidence presented, we find no reasonable possibility that the improper testimony by Detective Reese contributed to Robertson's convictions. The admission of this testimony was, therefore, harmless beyond a reasonable doubt. *State v. Clinton*, —— Ohio St.3d ——, 2017-Ohio-9423, —— N.E.3d ——, ¶¶ 136-138; *McKelton* at ¶ 190. Robertson's first assignment of error is overruled.

*State v. Robertson*, 2018 WL 3601848, ** 4-5 (alterations in original); Doc. 11-1, pp. 80-82.

Robertson has failed to show that the state court's evidentiary ruling is so egregious to fall within the narrow "category of infractions that violate 'fundamental fairness[.]'" *Dowling*, 493 U.S. at 352. Moreover, he has failed to demonstrate that the state court of appeals' determination is contrary to or an unreasonable application of clearly established federal law.

For the reasons set forth herein, the undersigned recommends that the Court **DISMISS and/or DENY** Ground One as procedurally defaulted, not cognizable on federal habeas review, and/or without merit.

**D.  The undersigned recommends that the Court DISMISS Ground Two**

In Ground Two, Robertson contends that his conviction was against the manifest weight of the evidence, arguing that the testimony of David Talley, the victim, was not credible because he informed the trial court prior to the start of the trial that he did not know who shot him and because there was no other evidence against Robertson.  Doc. 1, p. 8.  Robertson presented this claim in state court and the state court considered the claim.  Doc. 11-1, pp. 83-89.  However, a manifest weight of the evidence claim is not cognizable on federal habeas review.  *See Brown v. Moore*, 2008 WL 4239160, *2, 8-9 (S.D. Ohio 2008) (footnote 2 omitted) (citing and relying on 28 U.S.C. § 2254(a); *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984)).  ("A 'manifest weight of evidence' claim, which is based on a state law concept that 'is both quantitatively and qualitatively different' from a constitutional due process sufficiency of evidence standard, raises an issue of state law only that is not cognizable in a federal habeas corpus proceeding").  Accordingly, the undersigned recommends that the Court **DISMISS** Ground Two as not cognizable on federal habeas review.

21

## IV. Conclusion and Recommendation

As explained herein, Respondent's motion to strike Petitioner's supplement filed on January 13, 2020 (Doc. 16) is **GRANTED** and Doc. 15 is hereby stricken.  The unsigned letter (Doc. 14) is also stricken.  Robertson's motion to be heard concerning new facts (Doc. 18) is **DENIED**.

Further, for the reasons set forth herein, the undersigned recommends that the Court **DISMISS and/or DENY** Robertson's Petition (Doc. 1).

Dated: July 7, 2020

/s/ Kathleen B. Burke
Kathleen B. Burke
United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).